UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BLUETARP FINANCIAL, INC. | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL No. 2:13-cv-372-JDL |
| | ) | |
| ROCHESTER LINOLEUM & | ) | |
| CARPET CENTER, INC., | ) | |
| | ) | |
|     Defendant. | ) | |

## ORDER ON MOTION TO DISMISS

Defendant Rochester Linoleum & Carpet Center, Inc. ("Rochester Linoleum"), seeks the dismissal of this action on the basis that the court lacks personal jurisdiction under Fed. R. Civ. P. 12(b)(2), venue is improper under Fed. R. Civ. P. 12(b)(3), and, even if venue is proper, the forum is inconvenient. Def.'s Mot. to Dismiss, ECF No. 4. I **DENY** the Motion to Dismiss.

## I. BACKGROUND

Plaintiff BlueTarp Financial, Inc., ("BlueTarp") provides credit services to those buying construction materials. Compl. ¶5, ECF No. 1; Richardson-Newton Decl. ¶2, ECF No. 19. Dealers of construction materials contract with BlueTarp so that a dealer's customers can establish a credit account with BlueTarp by which to make purchases from the dealer. *Id.* at ¶¶2, 3, 5. Although BlueTarp is a Delaware corporation, its principal place of business is in Portland, Maine. Compl. at ¶2.

Rochester Linoleum sells flooring and flooring products to the construction industry and directly to homeowners. Pelusio Decl. ¶4, ECF No. 4-1. It is a New York corporation with a principal place of business in Rochester, New York. *Id.* at

1

¶3. All of Rochester's facilities are located in New York. *Id*. Rochester Linoleum does not transact sales, own property, or supply services in Maine. *Id*. at 5.

In 2008, BlueTarp and Rochester Linoleum executed four written agreements establishing a contractual relationship under which Rochester Linoleum would, among other things, direct all future applicants for trade credit to apply for a BlueTarp account. Richardson-Newton Decl. ¶¶13, 16, 19, 22. One of the four agreements—the "Commercial Contract Supplement to Purchase Account Agreement" (hereinafter, "the Supplement")—provided Rochester with the option of proposing to BlueTarp that certain Rochester customers receive more flexible repayment terms than were otherwise required. *Id*. at ¶ 23. This action arises from sixteen accounts governed by the Supplement as to which, according to BlueTarp, Rochester Linoleum failed to make payments on overdue customer balances subject to recourse liability. Compl. at ¶¶13–21.

## II. DISCUSSION

### A. Personal Jurisdiction

BlueTarp bears the burden of establishing that this court has personal jurisdiction over Rochester Linoleum and that venue is proper. *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009). That burden is satisfied if BlueTarp presents a prima facie case:

> Under this prima facie standard, the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction. *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008). The plaintiff's properly documented evidentiary proffers are accepted as true for purposes of making the

2

> prima facie showing, and we construe these proffers in a light most favorable to plaintiff's jurisdictional claim. *Id.* To the extent that they are uncontradicted, we add into the mix the facts put forward by the defendant. *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 31 (1st Cir.2010). The ultimate burden of persuasion is on the plaintiff. *Id.*

*BlueTarp Financial, Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 79 (1st Cir. 2013) (internal quotation marks omitted).

For personal jurisdiction to exist under the Due Process Clause of the Fourteenth Amendment and the Maine long-arm statute,[1] 14 M.R.S. § 704–A(1) (2013), BlueTarp must demonstrate that Rochester Linoleum has sufficient minimum contacts with Maine so that subjecting it to this forum's jurisdiction will not offend traditional notions of fair play and substantial justice. *See Glenwood Farms v. Cozen O'Connor*, 666 F.Supp.2d 154, 160 (D. Me. 2009). This can be accomplished by a showing of either "general" or "specific" jurisdiction. *Id.* General jurisdiction arises from a defendant's "continuous and systematic activity, unrelated to the suit, in the forum state." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998) (internal citations omitted). General jurisdiction does not apply in this instance because, apart from its contractual relationship with BlueTarp, Rochester Linoleum conducts no other business in Maine, owns no property and has no facilities or employees here, and has no other connections to the state. Personal jurisdiction over this case, if any, must arise from specific jurisdiction—that is, "where there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based

---

[1] Because Maine's long-arm statute is coextensive with the permissible exercise of personal jurisdiction under the Constitution, the constitutional inquiry controls. *See Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005); *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995).

3

activities, such as when the litigation itself is founded directly on those activities." *Id.* at 34.

The First Circuit applies the following three-part test to determine whether a defendant has contacts with a forum sufficient for the Court to exercise specific personal jurisdiction consistent with Due Process:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors,[2] be reasonable.

*Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995) (citation omitted). Because BlueTarp alleges a breach of contract claim and a corresponding unjust enrichment claim, my analysis concerns whether Rochester Linoleum's contacts with the forum "were instrumental either in the formation of the contract or its breach." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999). Simply entering into a contract with a person from another state does not grant that other state specific jurisdiction over the out-of-state party. *Burger King Corp.*, 471 U.S. at 478 (1985). Rather, the Court is required to look at the parties' prior negotiations, the contemplated future consequences of the contract, the contract's terms, and the

---

[2] The Supreme Court identified five elements comprising this reasonableness analysis, which the First Circuit later termed "gestalt factors:" (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

parties' actual course of dealing to determine whether there are minimum contacts sufficient to satisfy due process. *Id.* at 479.

The contractual relationship between BlueTarp and Rochester Linoleum originated and was negotiated in Charlotte, North Carolina, where both companies had offices. Richardson-Newton Decl. ¶29, Pelusio Decl. ¶12. In August 2008, BlueTarp and Rochester Linoleum executed a "New Accounts Credit Services Agreement" (hereinafter, the "New Accounts Agreement") under which Rochester agreed to direct all future applicants for trade credit to apply for a BlueTarp account. Ex. A to Richardson-Newton Decl. at 2. The agreement states that BlueTarp's prinicipal place of business is 443 Congress Street, Sixth Floor, Portland, Maine, 04101, and that the agreement is to be governed by the laws of the State of Maine. *Id.* The New Accounts Agreement also required Rochester to execute a "CCA Trade Credit Purchase Account Agreement – US" (hereinafter, the "PAA") which provided that all notices to BlueTarp were to be mailed or delivered to BlueTarp at its Portland, Maine address, and that the agreement would be governed by the laws of the State of Maine. Ex. A to Compl. 4, ECF No. 1–1.

In October 2008, BlueTarp and Rochester Linoleum entered into a "Portfolio Conversion Credit Services Agreement" (hereinafter, "Conversion Agreement") that enabled Rochester Linoleum to convert its existing credit accounts to BlueTarp accounts. *See* Ex. B to Richardson-Newton Decl., ECF No. 19-2. The Conversion Agreement identified BlueTarp's principal place of business as Portland, Maine, and provided that it too would be governed by Maine law. *Id.* at 3–7.

5

The parties also entered into a "Commercial Contract Supplement to Purchase Account Agreement" (hereinafter, the "Supplemental PAA") which authorized Rochester to seek to enroll certain customers into a BlueTarp credit program with more flexible repayment terms. *See* Richardson-Newton Decl. at ¶¶22, 23. To invoke this option, Rochester Linoleum was required to sign and send two documents to BlueTarp, a request for approval and a dealer notice, via email or via BlueTarp's 877-321-6699 fax line. *Id*. at ¶¶24, 25. The 877 fax line is the toll-free version of Blue Tarp's 207-321-6699 fax line. *Id*. at ¶25. All documents faxed to the line arrive at BlueTarp's Portland office. *Id*.

The parties operated under the terms of these four agreements for approximately two years. *Id*. at ¶36. BlueTarp's complaint seeks to hold Rochester Linoleum liable for the unpaid account balances associated with customers who, upon Rochester Linoleum's request, established trade accounts pursuant to the terms of the Supplemental PAA. Compl. at ¶¶13-29. Rochester Linoleum's liability, if any, for the debts that are the subject of the complaint arose from the requests for approval and dealer notices Rochester Linoleum faxed or emailed to BlueTarp's office in Portland and that were processed and approved in Maine. *Id*. at ¶¶7-12.

Over the course of the two-year relationship, Rochester Linoleum's employees had numerous interactions with BlueTarp's Portland office, directing numerous emails, faxes, letters, and other documents by overnight courier to BlueTarp in Maine. Richardson-Newton Decl. at ¶¶30-39, 43. One type of communication initiated by Rochester Linoleum involved numerous requests for approval and dealer notices to

6

which Rochester agreed to be liable for customers that failed to pay BlueTarp monies owed. Def.'s Reply 7, ECF No. 20. In addition, Rochester Linoleum frequently forwarded checks received from its customers to BlueTarp or, having deposited customer checks, forwarded its own checks to BlueTarp in Maine. *Id.* at 7–8. Over the course of the two-year relationship, Rochester Linoleum sent over 700 checks to BlueTarp's Portland office in nearly 100 separate mailings. Richardson-Newton Decl. at ¶40. In short, the evidence suggests an ongoing and active trade relationship between Rochester Linoleum's employees in Rochester, New York, and BlueTarp's employees in Portland.

Rochester Linoleum contends it had little reason to know of the extent of its employee's dealings with BlueTarp employees in Maine because the four initial contracts originated in Charlotte, North Carolina; Def.'s Mot. to Dismiss 5, ECF No. 4; its employees were largely unaware that the faxes and emails they sent to BlueTarp were received by BlueTarp employees in Portland; *id.* at 5–6; and its payments to BlueTarp were generally made by wire transfer. *Id.* at 6. It cites, for example, that only two of the emails received from BlueTarp employees explicitly refer to Maine. Def.'s Reply at 3.

Although Rochester Linoleum disclaims that its employees knew that they were conducting business with BlueTarp employees in Maine, *id.*, I am required to accept BlueTarp's properly-supported factual assertions as true. *See BlueTarp Financial, Inc.*, 709 F.3d at 79. I conclude that BlueTarp has established each of the three required elements of specific jurisdiction for the following reasons:

First, BlueTarp's claim against Rochester Linoleum is directly connected to Rochester Linoleum's forum-related activities in Maine. The complaint seeks recovery for unpaid account balances associated with customers who established individual trade accounts pursuant to the terms of the Supplemental PAA. Rochester Linoleum's potential liability for these unpaid accounts arises from the requests for approval and dealer notices it faxed or emailed to, and were approved at, BlueTarp's office in Portland. *See Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) ("[W]e have upheld the assertion of jurisdiction over defendants who have purposefully reach[ed] out beyond their State and into another by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State.") (internal quotations omitted).

Second, Rochester Linoleum's in-state contacts represent a purposeful availment of the privilege of conducting business activities in Maine. The various agreements the parties entered into made it plain that BlueTarp's principal place of business was in Maine and that Rochester Linoleum was to direct all notices to Maine. Although Rochester Linoleum claims otherwise, the evidence proffered by BlueTarp, when measured against the undemanding prima facie evidence standard, establishes that Rochester Linoleum's employees either knew or should have known that BlueTarp was administering all or most of the accounts related to Rochester Linoleum in Portland. The various communications and interactions Rochester Linoleum had with Maine demonstrate that it had "at least minimum contacts with the forum and that these contacts were not random, isolated or fortuitous." *Adelson*

*v. Hananel*, 652 F.3d 75, 83 (1st Cir. 2010) (internal citation omitted).  I conclude that it was foreseeable that Rochester Linoleum might find itself involuntarily engaged in litigation in Maine regarding unpaid accounts established pursuant to the Supplemental PAA.

Third, the exercise of jurisdiction in Maine is reasonable.  Although Rochester Linoleum leans heavily on the fact that the parties' initial agreement originated in Charlotte, North Carolina, the agreements themselves foretold the possibility that Rochester Linoleum would be engaged in frequent business contacts with BlueTarp's Portland office.  This is precisely what occurred over the ensuing two years.  In addition, having this dispute heard in Maine will not impose an undue burden on Rochester Linoleum, and is consistent with the other interests that are properly considered as part of the reasonableness determination.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Finally, Rochester Linoleum seeks to distinguish this case from *BlueTarp Fin., Inc. v. Matrix Const. Co., Inc.*, 709 F.3d 72 (1st Cir. 2013), on the basis that in that case, the original contractual relationship at issue originated in Maine and the contract had a forum selection clause that specified that disputes would be resolved in the courts of the State of Maine.  Those facts do distinguish that opinion from this case.  But neither fact is a critical or necessary element for special jurisdiction to exist where, as here, the totality of relevant circumstances otherwise demonstrates that Maine is a proper forum.

9

## B. Venue and *Forum Non Conveniens*

Rochester Linoleum also argues that venue is improper. However, because I have determined that personal jurisdiction rests in Maine and Rochester Linoleum is a corporate defendant, Rochester Linoleum is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c). Further, venue is proper in a diversity action in "a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(a). By operation of statute, Rochester Linoleum is properly treated as residing in Maine for purposes of venue. Venue also exists because the District of Maine is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b).

Contrary to Rochester Linoleum's additional argument that Maine is an inconvenient forum, the burden on Rochester Linoleum resulting from having to defend this action in Maine is no greater than the burden that befalls any out-of-state defendant in a diversity jurisdiction case. There is no indication that BlueTarp has any connection to New York, so the burden Rochester Linoleum will shoulder to produce its employees and witnesses for court proceedings in Maine is no greater than the burden BlueTarp would shoulder were it required to produce its employees and witnesses for court proceedings in New York. Rochester Linoleum has failed to show that "the compendium of factors relevant to the private and public interests

implicated by the case strongly favors dismissal." *Iragorri v. International Elevator*, 203 F.3d 8, 12 (1st Cir. 1999).

### III. CONCLUSION

For these reasons, I conclude that the Motion to Dismiss should be **DENIED**.

**SO ORDERED.**

                                            /s/Jon D. Levy
                                            U.S. District Judge

**DATED THIS 15TH DAY OF AUGUST, 2014.**